EDWARD C. MURPHY & another[1] *vs.* TOWN OF DUXBURY & others.[2]

No. 94-P-871.

Plymouth. February 8, 1996. - June 5, 1996.

Present: WARNER, C.J., ARMSTRONG, & PORADA, JJ.

*Practice, Civil,* Summary judgment. *Civil Rights,* Availability of remedy, Coercion. *Zoning,* Board of appeals: decision.

Plaintiffs seeking damages for financial loss and emotional distress pursuant to G. L. c. 12, §§ 11H and 11I, failed to demonstrate that their exercise or enjoyment of their rights was interfered with by the defendants' "threats, intimidation or coercion," or that the defendants, town officials, were motivated by other than a desire to enforce their interpretation of the town's zoning by-law; summary judgment was properly entered for the defendants. [518-519]

CIVIL ACTION commenced in the Superior Court Department on September 23, 1991.

The case was heard by *Richard S. Kelley,* J., on a motion for summary judgment.

*Philip M. Cronin* for the plaintiffs.

*Robert S. Troy,* Town Counsel, for town of Duxbury.

*Regina M. Gilgun,* for Sara E. Wilson & others, was present but did not argue.

PORADA, J. After a Federal judge dismissed the plaintiffs' action in the United States District Court against the town and various town officials for allegedly depriving them of their property rights and due process in violation of 42 U.S.C. § 1983, the plaintiffs filed this action in the Superior Court alleging the same wrongs in violation of the Massachusetts

[1]Janet P. Murphy, individually and as trustees of the Duxbury Marsh Realty Trust.

[2]Sara E. Wilson, Joseph J. Maher, Jr., Brackett B. Denniston, III, John J. Canty, Jr., and Frederic M. Clifford, all officials of the town of Duxbury.

Civil Rights Act, G. L. c. 12, §§ 11H and 11I. The defendants filed a motion for summary judgment. The motion judge allowed the motion on the ground that the defendants' actions constituted mere pursuit of their legal rights and did not amount to a deprivation of the plaintiffs' rights secured under the State Constitution by threat, intimidation or coercion. We affirm the judgment.

On appeal, the plaintiffs allege the motion judge erred in making factual findings and thereby depriving them of their alleged right to a jury trial; in failing to distinguish between the elements necessary to determine liability under 42 U.S.C. § 1983 and G. L. c. 12, §§ 11H and 11I; and in ruling that the plaintiffs did not establish a violation of their civil rights under G. L. c. 12, §§ 11H and 11I.

Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Massachusetts Hosp. Assn., Inc.* v. *Department of Pub. Welfare*, 419 Mass. 644, 649 (1995). A party moving for summary judgment who does not have the burden of proof at trial can establish entitlement to summary judgment by either submitting affirmative evidence that negates an essential element of the opponent's case or by demonstrating that there is no reasonable expectation that proof of the necessary elements will be forthcoming at trial. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). "The moving party must clearly show that there is an absence of evidence to support the nonmoving party's claim." *Tate* v. *Department of Mental Health*, 419 Mass. 356, 360 (1995). Viewing the evidence in the light most favorable to the nonmoving party, *Curtis* v. *School Comm. of Falmouth*, 420 Mass. 749, 753 (1995), we conclude that the judge properly determined that there is an absence of evidence to support the plaintiffs' claims for violation of their civil rights.

We summarize the evidence presented to the motion judge in the light most favorable to the plaintiffs. In December, 1987, the plaintiffs purchased property at 153-155 Bay Road in the town of Duxbury. At the time they purchased the property they presented the planning board with a plan showing two lots with a house on each lot. Neither lot contained the required frontage or square footage required for the construction of a single family dwelling. The planning board endorsed the plan "approval of the subdivision control law

not required" pursuant to the provisions of G. L. c. 41, § 81L.[3] The plaintiffs undertook the reconstruction of the house on the lot at 155 Bay Road first. When they completed it, they seeded and landscaped a portion of the lot which they believed belonged to them. The plaintiffs subsequently learned that a portion of the area landscaped was on land over which the defendant Wilson, a member of the planning board, and the defendant Maher, a member of the board of appeals, claimed a right of way.

The plaintiffs, pursuant to a building permit they had obtained to remodel the house, then began working on the house at 153 Bay Road. When the plaintiffs commenced construction, however, they discovered that the infrastructure of the house was badly rotted and proceeded to demolish the house. The plaintiffs then applied for a second permit to rebuild and enlarge the house. The building inspector granted the permit. While the work was progressing, the plaintiffs were informed by the building inspector that the defendant Wilson had voiced the opinion that the plaintiffs' work on the house was in violation of the zoning by-law. Subsequently, the plaintiffs were informed by their neighbors that at a neighborhood meeting the plaintiffs' development of this property was discussed and that the defendant Wilson had stated in substance that she would see to it that "[the plaintiffs] would never obtain an occupancy permit for the dwelling at 153 Bay Road." Around the same time, the plaintiffs received a visit at 153 Bay Road from the defendant Maher, who told the plaintiff Edward Murphy that he would do "whatever he had to do to prevent [Murphy] from obstructing what he felt was his claimed right of way."

Thereafter, the planning board requested that the building inspector issue a stop work order for the construction work. The planning board's decision was based on the board's belief that the permit was issued in violation of the town's protective by-law § 106.2. Section 106.2 allowed the restoration of a nonconforming building which had been damaged or destroyed provided the restoration did not exceed the original

---

[3]General Laws c. 41, § 81L, provides in part: "the division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing, shall not constitute a subdivision."

area or height of the original building. The foundation of the new house exceeded the original footprint but met the by-laws's set back requirements. The building inspector refused to comply with the planning board's request. The planning board then appealed the refusal of the building inspector to issue a stop work order to the board of appeals.[4] Prior to the hearing, a member of the board of appeals (the defendant Canty) had approached the building inspector and, referring to the plaintiff Edward Murphy, asked how "could we pull this guy's strings?"

The plaintiff Edward Murphy attended the board of appeals hearing. Although the defendant Maher was a member of the board of appeals, he did not sit as a member of the hearing board but did attend the hearing as a spectator. Maher told Edward Murphy at the hearing that if Murphy interfered with his claim of a right of way over Murphy's property he would have a "serious problem."

At the hearing before the board of appeals, the planning board presented an additional basis for its appeal, namely that the planning board's approval of the plaintiffs' plan "approval not required under the subdivision control law," did not confer upon them any rights under the town's zoning by-law and that any provisions of the town by-law which would permit the plaintiffs' construction of a house on this lot were in conflict with the provisions of G. L. c. 40A, § 6. Although the plaintiffs objected to the planning board raising this issue at the hearing, the board of appeals allowed the issue to be discussed. The board of appeals did, however, offer to continue the hearing so plaintiffs' counsel would have time to consider the issue and invited plaintiffs' counsel to submit a brief. The plaintiffs declined to do so. The chairman of the board of appeals, the defendant Denniston, then informed plaintiffs' counsel that he concluded that the plaintiffs had waived any rights which they might have had relative to the consideration of this issue by the board of appeals.

After the hearing but before the board of appeals rendered its decision, one of the members of the board of appeals, the defendant Clifford, approached the plaintiff Edward Murphy and said that people in the town "d[idn't] like change" and

---

[4]Defendant Wilson did not participate in the planning board's decision to appeal the building inspector's decision, but she had brought the plaintiffs' development to the planning board's attention.

that the plaintiff would be caused "harm" and should "watch [his] step in the future."

The board of appeals issued its decision in favor of the planning board, ruling that the latter's endorsement of the plaintiffs' plan "approval under the subdivision control law" did not give the plaintiffs any right to construct a house on a nonconforming lot. The board of appeals further ruled that while the provisions of §§ 106.2 and 106.5 of the town's protective by-law, when read together, could be construed to permit a conforming structure to be built on a nonconforming lot without a special permit, the provisions of § 106.5 were in conflict with G. L. c. 40A to the extent that it permitted the construction of a new house on a nonconforming lot rather than the extension or alteration of an existing structure without a special permit. Before rendering this decision, the chairperson of the board of appeals, defendant Denniston, had consulted with the defendant Wilson on a point of zoning law.

The plaintiffs appealed this decision to the Superior Court pursuant to G. L. c. 40A, § 17. Without an adjudication of the merits of the plaintiffs' appeal, on May 25, 1989, the building inspector issued the plaintiff a certificate of occupancy for 153 Bay Road. On June 8, 1989, the town and its building inspector brought an action for declaratory relief in the Superior Court seeking: (1) enforcement of the decision of the board of appeals and (2) an order of the court directing the plaintiffs to apply for a special permit for the construction of the house at 153 Bay Road and to remove the construction which lay outside the original footprint of the house which had been demolished. Simultaneously, the town recorded a notice of a zoning violation on this property in the Plymouth County registry of deeds. Although the defendant Maher did not participate in the decision of the board of appeals pertaining to this matter, he did sit in on executive sessions of the board of appeals and the board of selectmen pertaining to this litigation.

On the parties' cross motions for summary judgment in the zoning appeal case and the plaintiffs' motion for summary judgment in the town's action for declaratory relief, a Superior Court judge ruled that: (1) the plaintiffs' construction of a house outside the original footprint of the demolished house but which met the setback requirements of the existing zon-

ing by-law was permitted without a special permit under the town's zoning by-law; and (2) the town's zoning by-law was not in conflict with the provisions of G. L. c. 40A, § 6. The defendants appealed this decision to the Appeals Court. In an unpublished opinion, we affirmed the judgment of the Superior Court. The town then discharged the notice of the zoning violation placed on the property in the registry of deeds. The plaintiffs contend that because of the town's actions they were not able to sell or meet their financial obligations on their property. The plaintiffs ultimately lost their property when a bank foreclosed a mortgage on it. The plaintiffs claim compensatory damages for their financial losses and emotional distress.

In order for the plaintiffs to recover under the provisions of G. L. c. 12, §§ 11H and 11I, they were required to prove that: (1) their exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) were interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by "threats, intimidation or coercion." *Freeman* v. *Planning Bd. of West Boylston*, 419 Mass. 548, 564 (1995). The plaintiffs contend that the defendants have interfered with or attempted to interfere with their right under arts. 1 and 10 of the Massachusetts Declaration of Rights, to use and improve their property, see *Bell* v. *Mazza*, 394 Mass. 176, 178, 182-183 (1985), and their right to procedural due process.

Even if we were to assume without deciding that this was so, the plaintiffs' claim must fail for lack of proof that the interference has been caused by "threats, intimidation or coercion." See G. L. c. 12, § 11H. Adverse administrative action, at least when not part of a scheme of harassment, does not rise to the level of threats, intimidation or coercion. *Smith* v. *Longmeadow*, 29 Mass. 599, 603 (1990). In order to establish a "scheme of harassment" there must be some evidence of animus against the plaintiffs or their project and an attempt to thwart the project through adverse administrative action unrelated to the board's legitimate concerns. See *Freeman*, 419 Mass. at 565 n.17. Here, the plaintiffs rely upon statements made by the defendants Wilson and Maher which stem from a separate dispute with the plaintiffs over a claimed right of way. Wilson's statement is hearsay as set forth in the

materials and properly could be disregarded by the motion judge. Maher's statements relate solely to his exercise of his legal rights to a claimed right of way over the plaintiffs' property. Moreover, neither Wilson nor Maher participated in the decisions made by the planning board and the board of appeals. There is, therefore, no evidence that they took any steps to thwart the project through adverse administrative action.

As to the other statements made by Canty, Denniston, and Clifford (members of the board of appeals), the only troubling ones are Clifford's statements made to the plaintiff Edward Murphy that the town "d[idn't] like change," that the plaintiff would be caused "harm," and that the plaintiff should "watch his step in the future." Although these statements could reasonably be interpreted by the plaintiffs as threatening or intimidating, they do not, nevertheless, convey Clifford's personal animosity to the plaintiffs or the project. In addition, there is no evidence that the action of the board of appeals was motivated other than by a desire to enforce their interpretation of the town's zoning by-law and G. L. c. 40A, § 6. As the Supreme Judicial Court recently stated, "[w]e doubt the Legislature contemplated that every legal error committed by a local planning board [or a board of appeals], having the intended effect of requiring a landowner to alter in some way his proposed use of his property, should necessarily give rise to liability under the Act." *Freeman*, 419 Mass. at 566. There is no question that whether the plaintiffs could build a new house outside the footprint of the demolished house under the town's zoning by-law and G. L. c. 40A, § 6, presented complex and confusing issues for the town officials to solve. See *Goldhirsh* v. *McNear*, 32 Mass. App. Ct. 455, 458-461 (1992). Absent proof that the adverse administrative action was prompted by something other than a desire to enforce the town zoning by-law, the action against the town and the named officials in their official and individual capacities must fail.

Having concluded that the judge properly allowed summary judgment on the ground that the evidence was insufficient as a matter of law to establish liability against the town and its officials, we need not reach the plaintiffs' claims that they were entitled to a jury trial or that the judge failed

to properly distinguish between claims brought under 42 U.S.C. § 1983 and G. L. c. 12, §§ 11H and 11I.

*Judgment affirmed.*