Donohue, J.
INTRODUCTION
On March 30, 1998, the Defendants, Leslie Bodor (Bodor), Johanna Lawlor (Lawlor), and Lorraine Cambria (Cambria) (collectively, Defendants), filed a Motion for Summary Judgment. The Plaintiff, Carol Perkins (Perkins) opposed the motion. The Defendants seek summary disposition of those counts of the Amended Complaint which pertain to them, specifically, Counts I, III, IV and V. Count I alleges that Cambria violated Perkins’s civil rights by hazing her, and by denying Perkins her right to medical care and a safe working environment. Counts III, IV and V allege that each of the individual Defendants hazed Perkins, causing Perkins to involuntarily resign from her em *624 ploymentwith the State Police Academy. These actions amount to a wrongful termination in violation of a public policy, namely, to be free from hazing. Thus, through these three counts, Perkins seeks damages from each of the Defendants for her constructive discharge — wrongful termination.
The non-individual Defendants, namely, Commonwealth of Massachusetts Executive Office of Public Safety, Massachusetts Criminal Justice Training Council and the Department of State Police, filed a separate Motion for Summary Judgment. That motion was decided by a Memorandum of Decision and Order issued July 15, 1998 by this Court.
A hearing was held on June 12, 1998, atwhichtime both parties presented arguments to this Court. For the following reasons, the Defendants’ Motion for Summary Judgment is allowed.
BACKGROUND
The following facts are derived from the summary judgment record. Perkins was accepted to the Massachusetts State Police 70th Training Academy in November 1991. Perkins’s training began on June 15, 1992. Perkins suffered a groin strain during the second week of training. This condition was treated and healed without incident. On or about June 29, 1992, Perkins began to feel congested and experienced dizziness, and difficulty breathing. Perkins did not report her illness to any official or instructor on that day, nor on June 30, 1992, Instead, Perkins conducted her daily activities without complaint. On these two days, Perkins did not respond when the morning call was made for ill or injured trainees.
On July 1, 1992, during the morning run, Perkins informed Defendant Lawlor that she was having difficulty breathing and could not continue to run. Trooper Lawlor suggested that Perkins attempt to run again, and that she tiy to control her breathing. Perkins attempted the run, but was unable to breathe. Trooper Lawlor ordered Perkins to see Trooper Charles Gilmore, the paramedic at the Academy, for medical assistance. Perkins reported immediately to Trooper Gilmore.
Upon meeting with Trooper Gilmore, Perkins informed him that she felt congested, was sweating, had difficulty breathing, and was suffering from dizziness. Trooper Gilmore gave Perkins two Sudafed and a throat lozenge. Perkins returned to her training.
On July 2, 1992, Perkins responded to the morning call for sick or injured trainees, and reported to Surgeon General Doctor Murphy for examination. Upon examination, Dr. Murphy determined that Perkins was suffering from an allergic reaction and ordered that she be placed on light duty until the following Tuesday, July 7, 1992. An order that a trainee be placed on light duty prohibits that trainee from participating in any physical activity, including double-timing and other physical exertions. When a light duty order issues, Trooper Gilmore informs Commandant Trapasso, the Director of Recruit Training, and the Senior Drill Instructor of the cadet’s status. From there, verbal notification was given to the instructors and other supervisors, as deemed necessary. The cadets are expected, at a minimum, to comply with a light duly order.
Perkins did not participate in the morning physical activities. However, Perkins participated in physical activities that afternoon, including the command and leadership class and self-defense tactics. On Friday, July 3, 1992, Perkins visited her family physician, Dr. Hart. Dr. Hart diagnosed Perkins as suffering from bronchitis, and possibly pneumonia. Dr. Hart did not take x-rays of Perkins’s chest, nor did he indicate that she may be suffering from pneumonia in his medical notes. Dr. Hart prescribed antibiotics and rest.
The prescription for rest prompted Perkins to call the Academy on Monday, July 6, 1992 with the instructions for rest. Perkins was ordered by Trooper Domnarski to pack her gear and come to the Academy. Upon her arrival, Perkins met with Commandant Trapasso to discuss her health. Commandant Trapasso attempted to accommodate Perkins by suggesting that she be excused from participating in all physical activities and only attend classes. After discussing that option with Dr. Hart and Dr. Murphy, Perkins was ordered to not participate in physical activities, and to rest between classes. Perkins completed a written examination, which she did not find taxing to her health.
After the examination, Perkins went to the dining hall. In the hall, Perkins did not properly square her comers as required by Academy mies, for which she was reprimanded by Trooper Leslie Bodor. It is disputed whether Bodor called Perkins a “phony” and whether Perkins informed Bodor of her illness. A verbal argument ensued, during which Perkins attempted to leave the dining hall. She was ordered by other instructors to remain in the hall, but refused to comply with these orders. Perkins then verbalized her desire to leave the Academy. Perkins then met with Commandant Trapasso. At that time, Trapasso gave Perkins a demerit for her conduct in the dining hall. Trapasso agreed to allow Perkins to go home for the evening and return the following morning.
On Tuesday, July 7, 1992, Perkins returned to the Academy. She arrived after the morning physical activities, as instructed, and attended classes. Despite the order issued the prior day that she was not to participate in any physical activities, Perkins attended and participated in the command and leadership class. This class involves marching. Perkins was removed from physical participation in the class by Troopers Lawlor and Exarhopoulos. She was later taken to Maiy Lane Hospital. At the hospital, Perkins was given a chest x-ray and examined. The results of the x-ray are in dispute (the Defendants claim that the *625 x-ray revealed that Perkins did not have pneumonia, while Perkins alleges that she had walking pneumonia). Perkins’s prescription for antibiotics was changed at that time, and she was instructed by the physician to consume three glasses of water per hour.
Upon her return to the Academy that afternoon, Perkins participated in physical activities during the defense tactics class, Perkins so participated, despite her prior order from Commandant Trapasso that she not participate in physical activities, and not being ordered otherwise. In addition, although she had difficulty participating in the class, Perkins did not inform any instructors of her ailments, nor did she attempt to not participate in the class.
After the defense tactics class, the cadets conducted a room change drill. It is disputed whether Perkins participated actively in the drill, which involved running up and down stairs. The Defendants allege that Perkins was ordered to hold open a stairwell door for the participants, and yell orders to her classmates. Perkins contends that she participated in the drill until she was ordered to cease her involvement due to her illness, and subsequently was ordered to hold open the door. At the door, Perkins yelled until the point where she could no longer yell because of throat pain, and requested that she be permitted to stop yelling. That request was granted. At some point, the Defendants confronted Perkins and yelled at her regarding her low test scores and accusing Perkins of not wanting to become a trooper.
Despite her minimal participation, Perkins began to feel worse. However, she did not inform any instructor of her condition, or seek a meeting with Commandant Trapasso to request further accommodation. Perkins did not inform Trooper Cambria, the instructor, of her illness. The parties disagree as to whether Trooper Cambria denied Perkins access to water during the drill.
That evening, Perkins attempted again to get water from the hallway. Perkins was confronted by Cambria, who penalized Perkins. After this exchange, Perkins left the Academy. Plaintiff requested a medical deferment on July 9, 1992 and November 4, 1992, which was denied. Perkins did not seek workers’ compensation benefits for her illness.
The above facts provide the framework for the allegations lodged in Perkins’s Amended Complaint. Count I alleges that Cambria violated Perkins civil rights through her mistreatment of Perkins. Specifically, Perkins claims that Cambria violated Perkins’s rights under G.L. 12, §111, when Cambria subjected Perkins to hazing and failed to provide Perkins with either medical care or a safe working environment.
Counts III, IV and V of the Amended Complaint allege that Bodor, Cambria and Lawlor, respectively, each hazed Perkins, resulting in her constructive discharge from the Academy. Perkins alleges that the Defendants’ conduct amounted to hazing, causing her health to deteriorate. The ultimate result of the Defendants’ action was that Perkins was forced to leave the Academy and cease her training. Perkins alleges physical and emotional distress, lost wages and benefits and other damages.
The Defendants argue that Perkins’s claims are barred by the Workers’ Compensation Act, because she was an employee seeking damages for injuries which occurred during her employment. Under the Act, an employee cannot sue a co-employee for injuries sustained due to the latter’s fault, unless the injured employee has reserved her right to file common law claims, or such claims are of a nature not barred by the Workers’ Compensation Act. See G.L.c. 152 §§15, 24. Because Perkins did not preserve her right under Section 24, and because the claims for wrongful termination do not allege a cause of action which is exempted by the Workers’ Compensation Act, the Defendants argue that the present action is barred by the provisions of the Act.
The Defendants secondly argue that Perkins was not constructively discharged in violation of public policy. The Defendants allege that Perkins resigned from the Academy, and in any event, her discharge from employment-at-will was not in violation of a clearly established public policy exception. Further, because the Training Academy is not a student organization, the hazing statute does not govern the Academy’s actions.
DISCUSSION
1. Summary Judgment Standard
Summary judgment will be granted where there are no genuine issues of material fact and where the record presented entitles the moving party to judgment as a matter of law. See Cassesso v. Comm'r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c) (1997). The moving party bears “the burden of demonstrating that there is no genuine issue of material fact on every relevant issue.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in rule 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17. If the opposing party demonstrates that there are genuine issues of material fact, summary judgment is inappropriate. See id.; Mass.R.Civ.P. 56(c).
*626 II. The Merits of the Defendants’
Motion for Summary Judgment
A. The Wrongful Termination Counts
In Counts III, IV and V, Perkins seeks damages resulting from acts of the Defendants which she alleges amount to hazing. Perkins concludes that this hazing caused her to suffer physical and emotional damages, and forced her to resign from her position at the Academy. Perkins does not allege that these actions constitute a violation of her civil rights, rather, only that because of the Defendants’ actions and her resignation, she was wrongfully terminated in violation of public policy.
The Defendants dispute Perkins’s ability to bring a claim for such damages outside of the Workers’ Compensation Act. The Defendants argue that Perkins’s claims fall within the exclusivity provision of the Act, and that even if the Act did not apply, Perkins was not constructively discharged.
Perkins’s claims are barred by the Workers’ Compensation Act provisions. If an employee has not preserved her common law rights, she may only recover workers’ compensation benefits from her employer for injuries sustained in the scope of her employment. See Mulford v. Mangano, 418 Mass. 407, 410 (1994); G.L.c. 152, §24. In addition, it is well settled that an injured employee may not recover from a co-employee who caused or contributed to her injuries, if the co-employee was acting within the scope of his employment at the time of the injury. See id. “In this Commonwealth, where compensation benefits are available under G.L.c. 152, an employee injured in the course of his employment by the negligence of a fellow employee may not recover from that fellow employee if he also was acting in the course of his employment.” Saharceski v. Marcare, 373 Mass. 304, 306 (1977), citing Murphy v. Miettinen, 317 Mass. 633, 635 (1945). See also Mulford, 418 Mass. at 410-11 (quoting same language); O’Connell v. Chasdi, 400 Mass. 686, 690 (1987) (quoting same language for analogizing intentional torts of co-employees).
Perkins’s Amended Complaint does not suggest that the Defendants were not acting in the course of their employment when they committed the allegedly wrongful acts. Perkins’s Amended Complaint does state, however, that because of the action or inaction of the Defendants, her physical condition deteriorated and worsened, causing her to suffer physical and emotional distress. The Defendants’ conduct amounted to the infliction of personal injuries upon Perkins.
Perkins became ill while at the Academy. Perkins alleges that the Defendants, by depriving her of the appropriate medical care and failing to meet her medical needs, caused her condition to worsen to the point that she could no longer remain at the Academy. This is the same claim lodged against the co-Defendants (Commonwealth of Massachusetts Executive Office of Public Safely, Massachusetts Criminal Justice Training Council, and Department of State Police). This Court held that Perkins’s allegations against the co-Defendants amounted to claims for personal injuries. See Memorandum of Decision and Order dated July 15, 1998. A finding that Perkins suffered personal injuries as a result of the individual Defendants’ actions is necessitated in an analysis of the present motion, as the claims are identical to that set forth against the co-Defendants in Count 11.
Because the Defendants are employees of the' co-Defendants, Perkins’s claims are barred by the Workers’ Compensation Act. As set forth above, if an employee is injured in the course of her employment because of a co-employee’s negligence, the Workers’ Compensation Act compensates the employee for her injury and protects the negligent actor from independent litigation. See Mulford, 418 Mass. at 410-11; Saharceski, 373 Mass. at 306. Perkins does not allege that these actions violated her civil rights, in which case, she would not be prevented from seeking damages independent from any workers’ compensation benefits. See Foley v. Polaroid Corp., 400 Mass. 82, 84 (1987). Rather, Perkins’s complaint sets forth a common law tort for which workers’ compensation benefits are available for recovery. For these reasons, summary judgment must enter for the Defendants on Counts III, IV and V of the Amended Complaint.
B. Civil Rights Violation
In the last remaining count of the Amended Complaint, Perkins alleges that Trooper Cambria violated her civil rights when Cambria hazed Perkins and deprived Perkins of a safe working environment and medical care. It does not appear that the facts of the case are in dispute; thus, this Court must decide as a matter of law whether Cambria has violated Perkins’s civil rights. See Cassesso, 390 Mass. at 422; Community Nat’l Bank, 369 Mass. at 553; Mass.R.Civ.P. 56(c) (1997),
For a civil rights violation to succeed, a plaintiff must demonstrate that by threats, intimidation or coercion, the defendant interfered with the “exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth.” Swanset Development Corp. v. City of Taunton, 423 Mass. 390, 395-96 (1996), citing G.L.c. 12, §1II; Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 564, cert. denied, 516 U.S. 931 (1995); Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989); Murphy v. Duxbury, 40 Mass.App.Ct. 513, 518 (1996).
A. Secured Rights
For Perkins to be successful, she must first demonstrate that she has a right to be free from hazing, and a right to a safe working environment and medical treatment. The parties dispute whether the hazing statute applies to the State Police Academy and thus whether any violation of that statute constitutes a *627 violation of Perkins’s civil rights, The parties likewise dispute whether a safe working environment and medical treatment are secured rights.
1. Hazing
This Court begins by concluding that the hazing statute does apply to the Academy. The hazing statue prohibits initiation into a “student organization . . . which wilfully or recklessly endangers the physical or mental health of any student or other person.” G.L.c. 269, §17. The parties dispute whether the Academy is a “student organization” subject to the terms of the statute. There is an absence of any case law on point in this jurisdiction. Thus, this Court is left to the plain language of the statute. See Massachusetts Hosp. Ass'n., Inc. v. Department of Medical Sec., 412 Mass. 340, 346 (1992).
The Academy trains individuals to perform the role of Massachusetts State Troopers. There is an application process, and acceptance to the Academy. At the Academy, cadets undergo physical training and academic classes. The cadets must follow the orders of their instructors, and adhere to a predetermined schedule. From these minimal characteristics, it is not erroneous to consider the Academy an organization of students seeking training for their desired field.
In support of her position, Perkins cites the inquest report released in Matter of Timothy Shepard (Hampden Super. Ct, 1988) in which Justice Goldblatt concluded that the Academy’s actions violated the hazing statute. In addition, Perkins garners further support for her position by highlighting that the Academy adheres to the requirements of G.L.c. 269, §19 (requiring dissemination of hazing statutes). Based upon the only prior conclusion as to the applicability of the statute to the Academy, the Academy’s adherence to the terms of the statute, and the characteristics of the Academy setting, this Court concludes that the hazing statutes applies to the Academy. The absence of case law holding the State Police Academy to be a student organization is not fatal to this conclusion.
Having concluded that the hazing statute applies to the Academy, the next question is whether a violation of the hazing statute is a violation of the hazed individual’s civil rights. The statute prohibits the hazing of individuals as a part of initiation into a student organization. The statute does not confer any rights upon Perkins; rather, the statute delineates a crime. Compare with G.L.c. 15IB, §4, which prohibits discrimination on the basis of race, color, religious creed, etc., which have been recognized as within the realm of equal protection. See Opinion of the Justices to the House of Representatives, 374 Mass. 836, 838 (1977); Commonwealth v. King, 374 Mass. 5, 21 (1977); Massachusetts Declaration of Rights, art. 1. The hazing statute does not delineate any traits or characteristics which are within the framework of the Declaration of Rights, art. 1, nor does it confer upon Perkins any other rights which this Commonwealth has deemed as seemed. The hazing statute does not confer upon Perkins a secured right.
2. Safe Working Environment and Medical Treatment
There is an absence of case law delineating a safe working environment and medical treatment as secured rights for purposes of civil rights analysis. Likewise, the Declaration of Rights, art. I is silent as to these “rights.”
An employer is obligated to provide a safe work environment. See Barrett v. Rogers, 408 Mass. 614, 619 (1990); Longever v. Revere Copper & Brass, Inc., 381 Mass. 221, 223-24 (1980). However, neither the General Court nor the Supreme Judicial Court have indicated that such a right is a fundamental right flowing to the employee, There is no indication in either the Massachusetts or United States Constitutions that there is a right to a safe work environment. A safe work environment is not a “secured right” for civil rights purposes.
Similarly, there is no secured right to medical care. The Declaration of Rights, art. I is silent as to medical care, and the pertinent case law in Massachusetts pertains only to involuntarily committed patients, pretrial detainees, or incarcerated prisoners. See Williams v. Hartman, 413 Mass. 398, 401-02 (1992), and cases cited (federal due process right to medical care only where patient is involuntarily committed); Hopper v. Callahan, 408 Mass. 621, 624-25 and cases cited (1990) (same); Johnson v. Summers, 411 Mass. 82, 86 (1991) (prisoners and pretrial detainees have Eighth Amendment right to receive adequate medical care; deliberate indifference standard); Miga v. City of Holyoke, 398 Mass. 343, 349, n.8 (1986) (prisoner has right to physical and psychological medical care if reasonable person would seek same). This Court is unable to find any case or statutory law on point which would allow a ruling to the contrary.
In Massachusetts, there is not a recognized secured right to a safe working environment, nor is there a secured right to medical treatment outside of prison. Perkins does not provide any source for the contrary proposition. Likewise, there is not a secured right conferred upon Perkins with respect to the hazing statute. In light of the foregoing, Perkins’s civil rights claim must also fail.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendants, Leslie Bodor, Johanna Lawlor and Lorraine Cambria’s Motion for Summary Judgment is ALLOWED. It is further ORDERED that judgment ENTER as follows:
1. For the Defendant, Lorraine Cambria on Count I and Count IV of the Plaintiff, Carol Perkins’s Amended Complaint;
2. For the Defendant, Leslie Bodor on Count III of the Plaintiff, Carol Perkins’s Amended Complaint; and
*628 3. For the Defendant, Johanna Lawlor, on CountV of the Plaintiff, Carol Perkins’s Amended Complaint.